# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Thurlee Belfrey (1), Roylee Belfrey (2),
and Lanore Belfrey, a/k/a Lanore
VanBuren, (3),

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 14-373 ADM/TNL

---

Robert M. Lewis, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Deborah K. Ellis, Esq., Ellis Law Office, St. Paul, MN, on behalf of Defendant Thurlee Belfrey.

Kevin W. DeVore, Esq., Larson King, LLP, St. Paul, MN, on behalf of Defendant Roylee Belfrey.

Glenn P. Bruder, Esq., Mitchell, Bruder & Johnson, Edina, MN, on behalf of Defendant Lanore Belfrey.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendants Roylee Belfrey, Thurlee Belfrey, and Lanore Belfrey's (collectively, "Defendants") Objections [Docket Nos. 221, 222, 223] to Magistrate Judge Tony N. Leung's July 5, 2017 Report and Recommendation [Docket Nos. 217, 218, 219] ("R&R"). In the R&R, Judge Leung recommends denying Thurlee Belfrey and Roylee Belfrey's Motions to Dismiss Count 1 [Docket Nos. 166, 181], denying Lanore Belfrey's Motion to Dismiss Counts 1 and 2 [Docket No. 178], and denying Lanore Belfrey's Motion to Suppress Statements, Admissions and Answers [Docket

No. 173].[1]  For the reasons set forth below, all of the Objections are overruled.

## II. BACKGROUND

Defendants are charged in a multi-count indictment with conspiracy to commit health care and tax fraud.  See generally Fourth Superseding Indictment [Docket No. 159].  The Fourth Superseding Indictment alleges that from 2001 to 2014, Defendants participated in a conspiracy to defraud the United States by concealing Thurlee Belfrey's involvement in the operations and management of a healthcare business that accepted money from the Medicare and Medicaid federal healthcare programs.  Id. ¶¶ 9–10, 15–16.  Thurlee Belfrey's involvement in the business was concealed because he was excluded by the Minnesota Department of Human Services ("DHS") from participating in all federal healthcare programs after a felony conviction for Medicaid fraud in Minnesota state court.  Id. ¶¶ 6, 8.  The Fourth Superseding Indictment alleges that Defendants concealed Thurlee Belfrey's participation in the healthcare business by arranging for ownership of the business to be in the name of Thurlee Belfrey's wife, Lanore Belfrey.  Id. ¶ 9, 16.  Lanore Belfrey is also alleged to have:  1) falsely certified to the DHS that no persons with an ownership or control interest in the business and no agent or employee of the business had ever been convicted of a crime involving a Medicare or Medicaid program; 2) identified key employees of the business for background investigations, but intentionally withheld Thurlee Belfrey's name from DHS; and 3) signed IRS forms on behalf of the business even though Thurlee Belfrey controlled the business' operations.  Id. ¶¶ 9, 26.

In addition to concealing Thurlee Belfrey's involvement in the healthcare business, the

---

[1] The R&R also recommends denying Lanore Belfrey's Motion for Severance [Docket No. 180].  No objections have been filed to this portion of the R&R.

Fourth Superseding Indictment also alleges Defendants "caused the submission of false and fraudulent claims . . . and the diversion of proceeds of the fraud" for the personal use and benefit of Defendants and others. Id. ¶¶ 10, 17. The healthcare business operated by Roylee and Thurlee Belfrey allegedly received millions of dollars from healthcare programs funded by the United States during the course of the conspiracy and scheme. Id. ¶ 10.

Roylee and Thurlee Belfrey have filed Motions to Dismiss Count 1 of the Fourth Superseding Indictment, and Lanore Belfrey has filed a Motion to Dismiss Counts 1 and 2. Lanore Belfry has also filed a Motion to Suppress statements that she made to IRS agents who interviewed her in her home while law enforcement officers were executing a search of her residence. Judge Leung issued an R&R recommending that all of Defendants' motions be denied. All Defendants have filed Objections to the R&R.

### III.  DISCUSSION

**A.  Standard of Review**

A district judge may refer a defendant's motion to dismiss an indictment or motion to suppress evidence to a magistrate judge for recommendation. Fed. R. Crim. P. 59(b)(1). The district judge must make an independent, de novo determination of those portions of the report and recommendation to which a party objects. Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1)(C); D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**B.  Roylee and Thurlee Belfrey's Objections**

Roylee and Thurlee Belfrey both object to the recommendation to deny their Motions to

Dismiss Count 1 of the Fourth Superseding Indictment. They contend that Count 1 fails to sufficiently allege an indictable offense. The legal standard governing the sufficiency of an indictment provides that:

> An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).

Count 1 charges all Defendants with conspiracy to defraud the United States in violation of 18 U.S.C. § 286. This statute provides:

> Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 286.

Roylee Belfrey argues that the alleged conspiracy is solely predicated on concealing Thurlee Belfrey's involvement in the healthcare business, and that this involvement was not unlawful. Roylee Belfrey thus concludes that the Fourth Superseding Indictment fails to adequately allege a violation of 18 U.S.C. § 286. Thurlee Belfrey argues that Count 1 fails to allege a violation of 18 U.S.C. § 286 because it does not assert that claims were false, fictitious, fraudulent, or unearned. Their arguments fail for at least two reasons. First, the alleged conspiracy is not limited to concealing Thurlee Belfrey's involvement in the healthcare business. The Fourth Superseding Indictment also alleges that Defendants knowingly submitted false and

4

fraudulent claims for the provision of healthcare services. Fourth Superseding Indictment ¶¶ 10, 17. Second, this Court has already denied their previous Motions to Dismiss [Docket Nos. 72, 79] that sought to dismiss substantially similar counts in an earlier version of the Indictment. The previous Motions to Dismiss were denied because "[t]he superseding indictment states the essential elements of each of the offenses and is sufficient to advise the Defendants of the charges against each of them." R. & R., Nov. 17, 2015 [Docket No. 88] at 4, adopted Dec. 22, 2015 [Docket No. 95]; see also Mem. Op. & Order [Docket No. 129] at 5 (overruling objections to magistrate judge's denial of motions for bills of particulars because "[t]he Indictment includes enough information to adequately inform Defendants of the charges against them to enable the preparation of a defense and avoid surprise at trial"). Nothing in the Fourth Superseding Indictment warrants a different conclusion. Their Objections are overruled.

**C. Lanore Belfrey's Objection**

Lanore Belfrey objects to the recommended denial of: 1) her Motion to Dismiss Counts 1 and 2 of the Fourth Superseding Indictment; and 2) her Motion to Suppress evidence.

**1. Motion to Dismiss**

Lanore Belfrey argues that the Fourth Superseding Indictment fails to adequately allege violations of Count 1 and Count 2[2] against her because the Government does not include a

---

[2] Count 2 charges Defendants with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. Health care fraud is defined in 18 U.S.C. § 1347 as:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--

    (1) to defraud any health care benefit program; or

    (2) to obtain, by means of false or fraudulent pretenses, representations,

5

factual allegation that she was aware that Thurlee Belfrey was barred from participating in healthcare benefit programs. The Court disagrees. The factual allegations in the Fourth Superseding Indictment support Lanore Belfrey's awareness of her husband's exclusion because she took affirmative steps to conceal his involvement in the healthcare business. Fourth Superseding Indictment ¶¶ 9, 16. Those steps included listing the healthcare business in her name, omitting Thurlee Belfrey's name form background investigations, and signing IRS forms for the healthcare business even though Thurlee Belfrey controlled the operations of the business. Id. These factual allegations adequately allege the requisite scienter for the crimes charged in Counts 1 and 2.

### 2. Motion to Suppress

Lanore Belfrey also argues that Judge Leung wrongly concluded she was not in custody when IRS agents interviewed her in her home while law enforcement officers were conducting a search of her residence. The facts surrounding the search and interview are thoroughly detailed in the R&R and are incorporated by reference. See R&R at 17–25. Briefly, on March 20, 2014 at about 8:00 a.m., approximately one dozen law enforcement agents executed a search of Lanore and Thurlee Belfrey's residence. Hr'g Tr. [Docket Nos. 198, 201] at 17–18, 41–42,

---

      or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services . . . .

  (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

18 U.S.C. § 1347.

116–17. Lanore Belfrey was alone in her home and was wearing a bathrobe when the agents arrived. Id. at 20, 23, 62, 79, 119. At the time the search began, IRS Special Agent Valerie Ingram ("Ingram") informed Lanore Belfrey that she could leave the residence, but that if she chose to leave she could not return until the search was completed. Id. at 22, 57, 67–68, 78–79. Lanore Belfrey was also told that if she chose to stay she would be escorted throughout the house while the search was being conducted. Id. at 22.

Ingram then suggested that Lanore Belfrey get dressed. Id. at 23, 49, 120. Ingram and another IRS Special Agent, Kelly Petricka ("Petricka"), escorted Lanore Belfry upstairs to a bedroom, and the two female agents remained in the room while Lanore Belfrey dressed. Id. at 23–24, 50, 82, 120.

Ingram then asked Lanore Belfrey if she would be willing to speak with her and Petricka. Lanore Belfrey agreed. Id. at 25, 142, 144. Ingram and Petricka escorted Lanore to a three-season porch at the rear of her home to begin the interview, which lasted approximately three hours. Id. at 27, 33. The tenor of the interview was calm and casual. Id. at 72, 86. Lanore Belfrey appeared willing to answer questions and never expressed that she wished to conclude the interview. Id. at 35, 37. She was not provided a Miranda warning. Id. at 130. At the end of the interview, Lanore Belfrey was not arrested. Id. at 37, 73.

At the hearing on Lanore Belfrey's Motion to Suppress, Lanore Belfrey testified that she did not feel free to leave, but also testified that she did not want to leave the residence. Id. at 125–26, 147, 153.

In the R&R, Judge Leung examined the totality of the circumstances and concluded that Lanore Belfrey was not in custody at the time of her interview and consented to the interview.

7

Therefore, law enforcement was not required to provide her with a warning under Miranda v. Arizona, 384 U.S. 436, 444 (1966). Judge Leung thus recommended that the Motion to Suppress be denied.

Lanore Belfrey objects, arguing that she was in custody at the time of the interview. She contends that leaving the home was not a realistic option because a squad car was blocking her driveway and she was dressed only in a bathrobe. As a result, she argues that she would have had to leave her home in her bathrobe and walk barefoot in the snow to the nearest commercial center to locate a ride. Lanore Belfrey also argues that she felt compelled to stay at home and speak with the agents because a police-dominant atmosphere was created by the presence of several officers with guns, and because she was forced to dress in front of Ingram and Petricka and be escorted by them throughout her house.

Miranda warnings are required when law enforcement officers interrogate a person who "has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." United States v. New, 491 F.3d 369, 373 (8th Cir. 2007) (quoting Miranda, 384 U.S. at 444). "The ultimate question in determining whether a person is in custody for purposes of Miranda is whether there is a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest." United States v. Williams, 760 F.3d 811, 814 (8th Cir. 2014). This question is answered by considering "the totality of the circumstances that confronted the defendant at the time of questioning, and inquir[ing] whether a reasonable person would have felt that she was free to terminate the interview and leave." Id. The "most obvious" means of showing that a defendant has not been taken into custody "is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." Id.

The Eighth Circuit has repeatedly observed that when a person is questioned on their "own turf," the surroundings are "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation." Id. at 15.

Here, the Court agrees with Judge Leung's well-reasoned conclusion that Lanore Belfrey was not in custody at the time she was interviewed. Most significantly, law enforcement officials informed her that she was free to leave. Additionally, Lanore Belfrey agreed to answer the IRS Special Agents' questions. She was dressed and sitting in her home at the time of the interview, and the questioning was calm and did not include shouting, force, or deceptive tactics. Under the totality of the circumstances, a reasonable person would have felt free to terminate the interview and leave. Because Lanore Belfrey was not in custody at the time of the interview, her Objection is overruled.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Objections [Docket Nos. 221, 222, 223] to the July 5, 2017 Report and Recommendation are **OVERRULED**;

2. The Report and Recommendations [Docket Nos. 217, 218, 219] are **ADOPTED**;

3. Defendant Thurlee Belfrey's Motion to Dismiss Count 1 [Docket No. 166] is **DENIED**;

4. Defendant Roylee Belfrey's Motion to Dismiss Count 1 [Docket No. 181] is **DENIED**;

5. Defendant Lanore Belfrey's Motion to Dismiss Counts 1 and 2 [Docket No. 178] is **DENIED**;

6. Defendant Lanore Belfrey's Motion for Severance [Docket No. 180] is **DENIED WITHOUT PREJUDICE**; and

7. Defendant Lanore Belfrey's Motion to Suppress Statements, Admissions and Answers [Docket No 173] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 15, 2017.